**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

```
-----------------------------------------------------------x
IN RE:                                  :           CHAPTER 7
                                        :
EQUINE OXYGEN THERAPY                   :           CASE NO. 14-51611
RESOURCES, INC., et al.,                :
                                        :
DEBTORS                                 :           (JOINTLY ADMINISTERED)
-----------------------------------------------------------x
```

**MEMORANDUM OPINION SUPPORTING ORDERS**
**ON SETTLEMENT AND STAY RELIEF**

These jointly administered cases are before the Court on the following motions and objections:

1. <u>Motion for Relief</u>.  The Motion for Relief From the Automatic Stay [Doc. 44] filed by Kieran Marshall, as personal representative of the estate of Erica Marshall, and Sorcha Moneley (the "Claimants"); and

    a. the Chapter 7 Trustee's Objection to the Motion for Relief From Stay and Notice of Hearing [Doc. 48];

    b. the Claimants' Objection to the Trustee's Motion to Approve Settlement and Reply to the Trustee's Objection to Motion for Relief [Doc. 57]; and

    c. the Trustee and Evanston Insurance Company's Joint Response to the Objection to Motion to Approve Settlement Agreement [Doc. 58]; and

2. <u>Settlement Motion</u>.  The Trustee's Motion to Approve Settlement Agreement and Notice of Hearing [Doc. 46]; and

    a. the Limited Objection of Linley Investments to the Trustee's Motion to Approve Settlement Agreement [Doc. 56];

    b. the Claimants' Objection to the Trustee's Motion to Approve Settlement and Reply to the Trustee's Objection to Motion for Relief [Doc. 57]; and

    c. the Trustee and Evanston Insurance Company's Joint Response to the Objection to Motion to Approve Settlement Agreement [Doc. 58].

The Court held a hearing on the Motions and Objections on February 19, 2015, after which the matters were taken under submission. [Docs. 59 and 60].  Based on a review of the

applicable law, the papers filed and arguments of counsel, the Settlement Agreement between the Trustee and Evanston Insurance Company ("Evanston") is approved, subject to limitations accepted by Evanston at the February 19th hearing in response to the limited objection of Linley Investments. The Claimants' request for relief from the automatic stay to pursue the state court litigation in Florida is denied, provided the Trustee acts within a reasonable time.

## I.  FACTS

Prior to the bankruptcy, the Debtors manufactured and sold hyperbaric chambers for the rehabilitation of horses. On February 10, 2012, one of the hyperbaric chambers exploded during treatment of a horse, killing Erica Marshall and injuring Sorcha Moneley (the "2012 Explosion"). Marshall, through her representative, and Moneley filed lawsuits in the Marion County, Florida Circuit Court, seeking damages from the Debtors, among others (the "Florida Litigation"). *See* POC 1-1 (related to Marshall's wrongful-death claim); POC 2-1 (related to Moneley's personal-injury claim).

Debtors are the owners of a liability insurance policy issued by Evanston (Policy No. SP-XX2153), covering the period that includes the 2012 Explosion. [Doc. 48-1]. The policy limits are $1,000,000.00 for each claim and $1,000,000.00 for each occurrence, with a maximum liability of $3,000,000.00. *See id.* The policy is a "wasting policy," meaning the available insurance proceeds are reduced dollar-for-dollar by the costs incurred by Evanston in defending any potential claims. [Doc. 48-1 at 17].

Evanston is currently defending the Debtors in the Florida Litigation. According to the Affidavit of Raana Saric [Doc. 48-2], claims manager for Markel Service, Inc. (Evanston's claim service manager), Evanston "paid $246,919.05 in attorney fees and costs incurred in defending" the Florida Litigation through December 9, 2014. Therefore, the Claimants could recover

2

$753,080.95 from the insurance policy if Evanston incurs no further expenses, the Claimants receive judgments equaling at least that amount, and the judgments are covered losses under the policy.

The Claimants move for relief from the automatic stay to "pursue all applicable liability insurance coverage acquired by the Debtors." [Doc. 44]. The Claimants argue that the Trustee has no interest in the insurance proceeds because the proceeds are not property of the bankruptcy estate, to which the Trustee objects. [Doc. 48]. The Trustee has also identified two additional parties that might have a claim related to the 2012 Explosion. [Doc. 48]. The Trustee subsequently obtained an order extending the bar date for these potential claimants, but no claims have been filed and the bar date has passed. [Doc. 53].

The Settlement Motion seeks approval of the proposed Settlement Agreement with Evanston. The settlement is described in the Settlement Agreement and the related papers, and was clarified and amended at the February 19th hearing. Evanston has agreed to make an aggregate payment of $1,000,000.00, consisting of the remaining policy proceeds of $753,080.94 (the "Policy Proceeds") and a release payment of $246,919.06 (the "Release Proceeds").

The Trustee confirmed at the February 19th hearing that the Policy Proceeds will pay the allowed claims of the Claimants, although the allowed amount of the claims and the split of the Policy Proceeds among the Claimants are not yet determined. *See also* Doc. 46, ¶ 12. The Release Proceeds will compensate the Trustee for a release of all claims of the Estate against Evanston. Evanston's agreement to pay the Release Proceeds and the Policy Proceeds is also contingent on a bar to future litigation, as described in the proposed order submitted by the Trustee (the "Bar Order"). *See* Doc. 55.

At the February 19th hearing, to resolve the objection of Linley Investments,[1] counsel for Evanston agreed to limit its request for a bar order to claims arising from the 2012 Explosion and any litigation related thereto. Evanston agreed that the policy may still apply to other unrelated losses covered by the insurance policy, subject to any policy terms and limits.

## II.    DISCUSSION

### A. The Proposed Settlement is Fair and Equitable and Provides a Significant Recovery for the Bankruptcy Estate.

Settlement agreements are reviewed for reasonableness, which requires consideration of the aggregate settlement payment and any release by the Debtors' Estates (*i.e.*, claims against Evanston). This analysis also involves consideration of the component payments, the Policy Proceeds and the Release Proceeds, and the benefit Evanston receives from its bargain (*i.e.*, the bar order).

#### 1. The Court Will Approve a Settlement Agreement that Is Fair and Equitable.

The Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019, which provides in part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). For the Court to approve the compromise, it is necessary to determine if the settlement is fair and equitable based on the facts of the case. *See Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988); *see also Bard v. Sicherman (In re Bard),* 49 F. App'x 528, 530 (6th Cir. 2002) (unpublished) (the court makes an informed decision based on the facts of each case); *Stark v. Moran (In re Moran)*, Case No.

---

[1] Linley argues that "that the scope of any injunction should be restricted solely to claims against the Debtors and/or Evanston arising from or related to the Explosion and that any injunction should not affect any claims of any other entities against the Debtors, Evanston and/or any other entity." [Doc. 56 at 2].

4

07-8035, 2008 WL 1766874, at *4 (B.A.P. 6th Cir. Apr. 18, 2008) (unpublished) (no appellate court has implicitly or explicitly rejected the effectiveness of this approach).

Courts in the Sixth Circuit use a four-part test to assist with evaluation of a settlement agreement. *See Bard*, 49 F. App'x at 530; *see also Hindelang v. Mid-State Aftermarket Body Parts Inc. (In re MQVP, Inc.),* 477 F. App'x 310, 313 (6th Cir. 2012) (unpublished) (noting that the Sixth Circuit applies the *Bard* factors when faced with appeals from settlements in bankruptcy cases). Factors to consider under *Bard's* four-factor test are:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Bard,* 49 F. App'x at 530 (citations omitted).

### 2. The Release Proceeds Are Fair and Equitable Compensation for Release of a Potential Bad Faith Claim Against Evanston.

The Release Proceeds represent a settlement of any bad faith claims the Debtors' Estates may hold against Evanston. The Trustee will release the Estate's claim of bad faith against Evanston in return for the Release Proceeds, which is a fair and equitable resolution for the Estate and its creditors.

#### a. A Bad Faith Claim Is a Difficult Claim to Pursue to Judgment.

The *Bard* factors favor the Trustee's conclusion that settlement is the best course of action. Prosecuting a bad faith claim to conclusion in Florida is difficult. Under Florida law, an insurer has a "duty of good faith" that includes a duty to attempt settlement "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Novoa v. Geico Indemn. Co*., 542 F. App'x 794, 795 (11th Cir. 2013) (unpublished) (*citing Perera v. U.S.*

5

*Fid & Guar. Co.*, 35 So.3d 893, 898 (Fla. 2010)). Breach of this duty may give rise to a bad faith claim against the insurer. *Id.*

The burden of proof is high. It is not enough to show that an insurer can improve its claims process or that it was careless. *Id.* at 796. A showing of negligence alone also does not support a claim of bad faith. *Delaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. Dist. Ct. App. 1975). Rather, to prove bad faith the insured must show the insurer acted solely for its own interest. *Novoa*, 542 F. App'x at 796 (*citing State Farm Mut. Auto Ins. Co. v. LaForet*, 658 So.2d 55, 58 (Fla. 1995)). Even if an insured is able to satisfy this initial requirement, the insured must then prove that the alleged damages flowed from the insurer's bad faith. *Id.*

The question of bad faith is a fact-intensive inquiry. Bad faith is determined under a totality-of-the-circumstances test. *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 680 (Fla. 2004). Reasonable diligence and ordinary care are material in determining bad faith and "reasonable diligence and ordinary care are considerations of fact - not law." *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530-31 (Fla. 1974). It is difficult to resolve fact-intensive bad faith claims on summary judgment, particularly where Florida places a higher burden on a party moving for summary judgment by requiring the moving party to conclusively show that no material issues remain for trial. *See Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 923-24 (Fla. Dist. Ct. App. 2007). Such cases are likely to necessitate a jury trial, which further increases the litigation costs.

Bad faith claims also inevitably result in costly and time-consuming discovery. It is common for plaintiffs to seek the insurer's litigation file, which frequently results in discovery disputes over work product and attorney-client privilege. *See, e.g., Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064 (Fla. 2011) (holding attorney-client privilege is applicable in the first-party bad faith context); *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121 (Fla. 2005)

6

(permitting discovery of work product in first-party bad faith actions). In addition, expert testimony at trial is often necessary. *See, e.g., Berges*, 896 So. 2d at 677-78 (comparing expert testimony); *United Auto. Ins. Co. v. Estate of Levine*, 87 So. 3d 782, 783-84 (finding the absence of expert testimony relevant in the decision).

The difficulty of prosecuting a successful bad faith claim in Florida confirms settlement of the Debtors' alleged bad faith claim against Evanston saves the Estate substantial time and money, thus justifying the agreed resolution.

### b. The Trustee's Business Judgment on the Reasonableness of the Settlement Amount Deserves Deference.

The Court also considers the Trustee's business judgment in evaluating a proposed compromise. A long-standing panel trustee's judgment that a settlement amount is reasonable deserves deference:

> The Trustee's decisions are somewhat protected by the "business judgment rule," which could be better described as a rebuttable presumption rule. *See In re Dalen,* 259 B.R. 586 (Bankr. W.D. Mich. 2001) (the application of the business judgment rule was addressed with respect to the Rule 9019(a) approval of a settlement). This rule protects a disinterested trustee so long as any decision falls within the range of what an informed businessman would have rationally decided under the circumstances. This Court is always reluctant to disregard the business judgment of the Trustee with respect to the settlement or compromise of the bankruptcy estate's claims, as it is that Trustee who is more knowledgeable of the strengths and weaknesses of their cases. Moreover, this agreement does not have to be an agreement the Court would enter, but must simply be above the lowest point in the range of reasonableness. *In re Carson,* 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987).

*In re Batt*, 488 B.R. 341, 353 (Bankr. W.D. Ky. 2013).

The Claimants offer no reason to question the Trustee's judgment that the amount of the settlement is fair and equitable. Counsel for the Claimants stated at the February 19th hearing that the Claimants may raise an objection to the fee amount in the Florida Litigation, thus

7

suggesting that the agreed amount of the Release Proceeds is objectionable.  But the Claimants did not choose to do so in this Court.  An objecting party cannot hide behind potential arguments as a means to avoid disputing proof favoring a proposed settlement.

Without a valid reason for the Court to question the Trustee's business judgment, the Court accepts the Trustee's opinion that a release of the bad faith claim in exchange for the Release Proceeds is fair and equitable.

### 3. Deposit of the Policy Proceeds for Payment of Allowed Claims of the Claimants with the Trustee Is a Reasonable Action that Does Not Prejudice the Debtors' Estates or the Claimants.

Wrongful death and personal injury actions against multiple defendants require significant discovery and expert testimony if they go to trial.  This obviously takes time and money, which addresses the first three *Bard* factors.  The Court must also consider the equities of Evanston's agreement to turn over the Policy Proceeds to the Trustee as part of the last *Bard* factor (*i.e.*, the impact on the Claimants).

The proposal should benefit the Claimants because Evanston is not contesting their right to recovery under the insurance policy and the Trustee will make the full amount of the Policy Proceeds available to pay the Claimants' allowed claims.  Also, the insurance available to pay any judgments will decrease by additional attorney fees and costs incurred as part of the Florida Litigation if the Settlement Agreement is not approved.  The accumulation of additional attorney fees and costs after December 9, 2014, is avoided if the Settlement Agreement is approved.

Therefore, it is hard to understand why the Claimants object to the Trustee holding the Policy Proceeds for distribution.  The Claimants argue that the proceeds are not usually part of a debtor's estate because the debtor is not entitled to the proceeds of the policy and the Trustee should not include payment of the Policy Proceeds as part of his overall settlement.  [Doc. 44]

The Claimants also assert the lack of interest in the policy proceeds justifies relief from the stay to proceed in the Florida Litigation.

These arguments are not persuasive. Section 541, defining property of the estate, is broad in scope. 11 U.S.C. § 541(a). *See, e.g., Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 599 (6th Cir. 1991). It covers not only a debtor's legal interest in property, but also equitable interests of the debtor at the time the petition is filed. 11 U.S.C. § 541(a).

Some courts have decided that the proceeds of a liability insurance policy are not property of the estate, distinguishing a debtor's ownership of an insurance policy from an interest in the proceeds of that policy. *See, e.g., Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55-56 (5th Cir. 1993). But other courts have concluded that such proceeds are estate property, particularly where a debtor's insurance coverage is insufficient to cover the claims against it and exhaustion of available insurance proceeds threatens to expose a debtor's estate to significant excess liability. *See, e.g., Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 534 (5th Cir. 1995) ("virtually every court to have considered the issue has concluded that the policies—and clearly the proceeds of those policies—are part of a debtor's bankruptcy estate"); *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560-61 (1st Cir. 1986).

It might make sense to ignore insurance proceeds when there is nothing for the estate. But when the estate will benefit from delivery of the insurance proceeds, the broad reach of § 541 requires treating the proceeds as an estate asset. The Fifth Circuit in *Edgeworth* acknowledged the possibility of a different result if required by the particular circumstances of a case, noting, "no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or

9

...
...

competing claims to proceeds." *Edgeworth*, 993 F.2d at 56. This case presents unique facts that justify the result in these circumstances.

Delivery of the Policy Proceeds is necessary to end Evanston's involvement in defense of the Florida Litigation, which is a condition to payment of the Release Proceeds. The Trustee has structured the transaction so that the Claimants are not harmed, because they will receive all of the Policy Proceeds, provided their allowed claims equal or exceed this amount, as well as their pro rata share of the Release Proceeds for any additional unsecured claim. Therefore, there is no reason to deprive other estate creditors of the benefit of this settlement.

### 4. Barring Claims Against the Insurance Policy and Evanston Related to the 2012 Explosion Does Not Materially Affect Any Party.

Evanston conditions its settlement payments on entry of an order barring claims against the insurance policy and Evanston related to the 2012 Explosion. *See* 11 U.S.C. § 105(A). Entry of a bar order that precludes third parties from pursuing independent claims is permitted under 11 U.S.C. § 105 as an extraordinary remedy that is justifiable where the bar order is integral to the settlement. *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449 (11th Cir. 1996). A bar order must be fair and equitable, taking into consideration factors such as the interrelatedness of the claims that the bar order precludes, the likelihood of non-settling defendants to prevail on the barred claim, the complexity of the litigation, and the likelihood of depletion of the resources of the settling parties. *Id*. at 455.

These facts present a unique situation that justifies limitation of Evanston's obligations related to the 2012 Explosion and Florida Litigation. *See Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002) (a bankruptcy court has broad authority to enjoin non-consenting creditor's claim against a non-debtor).

First, the proposed Bar Order is limited to claims related solely to the 2012 Explosion. At the February 19th hearing, Evanston agreed that it would still proceed with the Settlement Agreement if the Bar Order only addressed the 2012 Explosion and the related Florida Litigation. Therefore, the settlement does not preclude a claim under the insurance policy for an unrelated loss.

Second, there should be no other claims against Evanston related to the 2012 Explosion. Only the Claimants have filed proofs of claim related to the 2012 Explosion and the bar date has passed. The Trustee also extended the bar date when he found information that suggested other parties might have losses related to the 2012 Explosion. [Doc. 53]. Again no additional claims were made.

Finally, the litigation is certainly complex and will result in the depletion of not only the Estates' resources in prosecuting any potential bad faith claim, but also an erosion of any potential insurance proceeds because of the nature of the "wasting policy." All factors are satisfied for the Court to find that the proposed bar order, with the limitation requested by Linley Investments and agreed to by Evanston, is fair and equitable.

The Claimants object to the proposed Bar Order, but have not shown how they will suffer prejudice if it is imposed. It is difficult for the Court to see how they could be harmed. Evanston has agreed to deposit the Policy Proceeds, its maximum exposure on any judgments in the Florida Litigation, for payment to the Claimants. Further, the Trustee agrees the entire amount of the Policy Proceeds is available to pay the Claimants' allowed claims.

The Claimants have asserted no legal basis to require participation of Evanston in the Florida Litigation. The Debtors, not Evanston, are defendants. Evanston is obligated to cover losses as provided by the insurance policy, which it has done by paying attorney fees and costs

and making the Policy Proceeds available for payment of any allowed claims. It is now up to the Trustee to determine how he will pursue the Debtors' rights in the Florida Litigation, but that does not require Evanston's future participation. *See infra* at Section II.B.

Though not directly raised by the Claimants as a potential loss, the proposed order for relief suggested the Claimants may seek further relief from the stay to pursue a bad faith claim against Evanston. [Doc 44-1 at 2]. The Motion for Relief does not address any such claim or explain why the Claimants might have a bad faith claim against Evanston. In fact, the Claimants have acknowledged that they rejected Evanston's offer of the full $1,000,000.00 limit of the policy in August 2014. [Doc. 57 at 2]. It is impossible to determine the basis of the Claimants' bad faith claim from the record.

At some point, the Claimants must come out from behind the curtain and provide a reason for their actions. A passing reference to a potential future stay relief request in a proposed order cannot stand as argument or evidence the Claimants currently possess or stand to lose any direct bad faith claims against Evanston if further action against Evanston is barred.[2]

The Bar Order is fair and equitable and a condition to the compromise. Therefore, including the Bar Order as part of the total settlement package is appropriate.

**B. The Motion for Relief Is Denied.**

The Claimants seek stay relief to proceed against the Debtors in the Florida Litigation "because the state court action in Florida is the proper and most efficient forum to adjudicate liability and personal injury/wrongful death damages relating to state law claims." [Doc. 44, p. 2]. Approval of the Settlement Agreement may call this argument into question.

---

[2] Such a claim may be derivative anyway, and thus lost by the Trustee's settlement. *See Fid. & Cas. Co. of New York v. Cope*, 462 So.2d 459, 461 (Fla. 1985). The Florida Supreme Court has held "that a bankruptcy trustee may bring an action against the bankrupt's insurance company for the bad faith failure to settle a claim." *Camp v. St. Paul Fire & Marine Ins. Co.*, 989 F.2d 428, 429 (11th Cir. 1993) (citing *Camp*, 616 So.2d 12 (Fla. 1993).).

The Settlement Agreement effectively creates a security interest in the Policy Proceeds for the allowed amount of POC 1-1 and POC 2-1.  Allowed claims in excess of the Policy Proceeds are unsecured claims, which will also benefit from the Release Proceeds.  The only remaining issue is a determination of the allowed amount of these claims.

Relief from the stay for cause is determined on a case-by-case basis.  *Laguna Assocs. Ltd. P'ship. v. Aetna Cas. & Sur. Co. (In Re Laguna Assocs. Ltd. P'ship.)*, 30 F.3d 734, 737 (6th Cir. 1994).  The Trustee suggests he will seek estimation of the claims, which, if possible, would obviate the need for continued participation in the Florida Litigation.  The Claimants believe the Florida Litigation is the appropriate place for final resolution of their claims, but approval of the Settlement Agreement may change their position.  Therefore, denial of the Motion for Relief is the best course of action at this time.

Denial is without prejudice to re-file after 30 days if the Trustee has not taken action to liquidate the allowed claims of the Claimants.  The 30-day period will give the parties time to consider the impact of the Settlement Agreement, discuss their differences and take appropriate action.

## III. CONCLUSION

The Settlement Agreement is fair and equitable.  Stay relief is not warranted at this time, provided the Trustee acts promptly to liquidate the claims.  For the reasons stated herein:

1. The Settlement Agreement is approved pursuant to FED. R. BANKR. P. 9019(a) and future litigation or claims against Evanston related to 2012 Explosion and the Florida Litigation are barred; and

2. The Claimant's request for stay relief is denied without prejudice to re-file if the Trustee does not take action to liquidate the allowed claims of the Claimants within 30 days from entry of this Order.

The Court shall enter separate orders consistent herewith.

14

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, March 20, 2015**
(grs)